UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:

                                       Chapter 13

ANITE PICHONOT,

                                       Case No. 17-75360 (las)

           Debtor.

------------------------------------------------------------------X
ANITE PICHONOT,

           Plaintiff,

                                       Adv. Pro No.

   -against-


RUSHMORE LOAN MANAGEMENT SERVICES,
LLC; JPMORGAN MORTGAGE ACQUISITION
CORP.,

                     Defendants.
------------------------------------------------------------------X

## **COMPLAINT**

1.     Debtor and Plaintiff Anite Pichonot ("Plaintiff"), by and through her counsel, respectfully submits, as and for her complaint (the "Complaint") against secured creditor JPMorgan Mortgage Acquisition Corp. ("JPMMAC") and its servicer, Rushmore Loan Management Services, LLC ("Rushmore" and, with JPMMAC, "Defendants"), and states as follows:

## JURISDICTION AND VENUE

2. This adversary proceeding relates to *In re Anite Pichonot,* Case No. 17-75360 (LAS).

3. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157. 1334, and 1367.

4. Venue of this case and of this Adversary Proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Venue would be proper in this matter in either the Bankruptcy Court or the District Court for the Eastern District of New York if the reference is withdrawn by the District Court.

5. The statutory predicates for the relief sought herein are: Sections §§105(a) and 541 of the Bankruptcy Code; 12 U.S.C. § 2602; 12 U.S.C. §2605(f); and 12 C.F.R. §§ 1024.5, 1024.35, 1024.36, §1024.38 and 1024.41. This matter is an adversary proceeding under Rule 7001(1) and (9) of the Federal Rules of Bankruptcy Procedure. It is either a "core proceeding" as that term is defined in 28 U.S.C. § 157(a), (b)(1), (b)(2)(A), (b)(2)(k), or is related to the case as defined and allowed in §157(c)(1).

6. Plaintiff submits that the claims set out herein constitute core claims pursuant to 28 U.S.C. §157(b)(2)(A), (G), (K) and (L). However, because the Plaintiff seeks a jury trial on the underlying claims, it would be proper to withdraw the bankruptcy reference for the purposes of trying these claims to a jury.

## THE PARTIES

7. Plaintiff Anite Pichonot is the Debtor in the above-referenced Chapter 13 Case. She resides at 520 Grant Avenue, Baldwin, NY 11510 (the "Primary Residence").

8. Defendant JPMMAC is the alleged holder of the mortgage for the Primary Residence.

9. Defendant Rushmore is the mortgage servicer for JPMMAC with respect to the subject mortgage.

10. All of the actions of Rushmore relevant to this action were undertaken pursuant to a contractual agreement designating Rushmore as the agent of Defendant JPMMAC.

11. Defendant JPMMAC filed Proof of Claim # 5 in the main case on January 15, 2018.

12. Defendants have consented to the jurisdiction of the Bankruptcy Court by participating in the main case.

13. JPMMAC's claim (attached hereto as **Exhibit "A"**) alleges a debt secured by the Primary Residence of $748,884.00, with arrears in the amount of $362,044.88.

## STATEMENT OF FACTS

14. Plaintiff has been attempting to obtain a workout option in the form of loss mitigation for years. Through prior counsel, she first filed a "Request to enter into the Loss Mitigation Program" with respect to the Subject Property on September 20, 2017.

15. "Loss mitigation" ensued for almost two years. A copy of the "Loss Mitigation Status Report" filed by JPMMAC on October 17, 2018 ("JPMMAC October 17 Letter") is annexed hereto as **Exhibit "B".**

16. As set forth in the JPMMAC October 17 Letter, Plaintiff Pichonot attempted repeatedly to convey a complete loan modification application to Defendants, and also, as is set forth more fully herein, is the only party to correctly identify determine, and argue, that the so-called "Loan Modification" purportedly offered by Rushmore on behalf of JPMMAC was not a loan modification at all. *See* Exhibit B, letter from Anite Pichonot dated September 4, 2018 to Rushmore,

reading, "a forbearance agreement, which I was approved for, is not affordable for me at this time."

17. Also apparent is that Plaintiff Pichonot had a breakdown in communication with her then-counsel, Adam C. Gomerman. Annexed hereto as **Exhibit "C"** is a motion to reopen loss mitigation filed by Plaintiff *pro se* on February 28, 2018. As a result of this breakdown in communication, and Rushmore's repeated insistence that it had offered a loan modification to Plaintiff when it had not, Plaintiff was deprived of a meaningful opportunity to attempt to modify her loan.

18. Based on the representation by JPMMAC and Rushmore that Rushmore had offered Plaintiff a "loan modification" and that she supposedly refused the purported "loan modification" (which was not, in reality, a loan modification at all), the Court terminated loss mitigation pursuant to an order entered on October 31, 2018. Annexed hereto as **Exhibit "D"** is a copy of the order.

19. Once loss mitigation was terminated based upon the Defendants misrepresentation that a loan modification had been offered and rejected, JPMMAC renewed its motion for relief from the automatic stay, and Plaintiff looked for new counsel.

20. On January 8, 2019, Erin E. Wietecha filed a notice of appearance as counsel to the Debtor. On January 16, 2019, Attorney Wietecha filed a motion to be substituted as Debtor's counsel. The motion was granted on February 14, 2019.

21. On January 11, 2019, Charles Wallshein filed a notice of appearance as special counsel for the purpose of loss mitigation.

22. On March 19, 2019, Charles Wallshein filed his motion to be added as additional special counsel in this adversary complaint.

23. Plaintiff opposed JPMMAC's motion for relief from the stay because, among other things, Plaintiff did not agree that loss mitigation should have been

terminated and because the purpose of her Chapter 13 plan was to resolve the default on her home loan through loss mitigation. A copy of Plaintiff's Memorandum of Law in opposition to JPMMAC's motion for relief from stay is annexed hereto as **Exhibit "E."**

24.    Among the objections Plaintiff raised (this time through counsel and not *pro se*), is that Rushmore: (a) has never offered her a loan modification; and (b) misrepresented to the Court repeatedly that it had offered Plaintiff a modification that she then refused.  See Exhibit E.

25.    As Plaintiff pointed out *pro se*, the purported "loan modification" offered by Defendants did not, as would be expected of a loan modification, contain: (1) any mention of principal forbearance or forgiveness; (2) any indication that any amount is being added to a "new principal balance;" (3) any indication that the (nonexistent) new principal balance is being reamortized over a certain period of years; (4) a new loan term; (5) a new interest rate; or (6) any mention of whether or not there is a balloon payment.  Nor did the purported "loan modification" recite by its express terms that it was modifying the terms of the note and mortgage (because it was not).  Instead, it makes clear that the original note and mortgage remained in effect, and unmodified.  See Forbearance/Reinstatement Plan (disingenuously and erroneously referred to as a "Loan Modification,") contained in Exhibit E.

26.    Additionally, Plaintiff submitted, through her loss mitigation counsel, "Requests for Information" pursuant to Regulation X, Section 1024.36 and a "Notice of Error and Notice of Appeal" pursuant to 12 C.F.R. §§1024.35 and 1024.41 to Rushmore on January 16, 2019.  Annexed hereto as **Exhibit "F"** are copies of the RFI and Notices of Error and Appeal ("Notices").

27.    JPMMAC and Rushmore responded in part but failed to respond completely to the RFI and Notices.  Rushmore's response is annexed hereto as **Exhibit "G."**

## THE NATURE OF THIS ADVERSARY PROCEEDING

28. This Adversary Proceeding arises out of, among other things, Defendants' multiple violations of state and federal law during the loss mitigation process and the resulting needless harm to the Plaintiff/Debtor.

29. Rushmore has violated state and federal law and has repeatedly made misrepresentations and omissions of material facts to the Debtor and the Bankruptcy Court for the Eastern District of New York, when Rushmore falsely claimed that it had offered a loan modification to the Debtor, and that she had declined the offer.

30. Rushmore has repeatedly misrepresented and omitted material facts regarding the type of and nature of loss mitigation available to the plaintiff not only under national loss mitigation programs but also under the authority granted to Rushmore as the servicer for the benefit of the investors in the loan.

31. Rushmore was specifically required by the "deal documents" for the investor to consider all qualifying loans for HAMP if they were in default or in imminent danger of default and, to use its business judgment to modify loans to resolve defaults, including utilizing principal forbearance or forgiveness; (2) capitalization of defaulted amounts due, reamortization of the loan, reduction of interest rates, use of balloon payments to create an affordable loan modification to prevent foreclosures.

32. Additionally, Rushmore has failed to comply with numerous federal regulations and state statutes that govern both its conduct and that of the Defendant JPMMAC.

33. Plaintiff's mortgage loan is a federally-related mortgage loan as defined by RESPA.

34. RESPA provides a private right of action pursuant to 12 U.S.C. §§2605(f) for any violation of RESPA or Regulation X.

35. The loss mitigation provisions of Regulation X were implemented by the Consumer Financial Protection Bureau pursuant to a grant of congressional authority arising from the 2010 Dodd/Frank Wall Street Reform and Consumer Protection Act.

36. In passing the Dodd/Frank Wall Street Reform and Consumer Protection Act, Congress recognized an important policy objective in avoiding preventable foreclosures on federally-related mortgage loans.

37. RESPA and Regulation X impose on mortgage servicers a duty of due care to the borrowers of federally-related mortgage loans.

38. Mortgage servicers "must maintain policies and procedures reasonably designed to meet the objectives identified in 12 C.F.R. §1024.38(b)."

39. Mortgage servicers must have "policies and procedures" that are "reasonably designed to ensure that the servicer can" perform the following tasks:

   a. Provide accurate information regarding loss mitigation options available to the borrower 12 C.F.R. §1024.38(b)(2)(a).
   b. Identify specifically all loss mitigation options available to a borrower 12 C.F.R. §1024.38(b)(2)(a).
   c. "In response to a complete loss mitigation application, properly evaluate the borrower for all eligible loss mitigation options pursuant to any requirements established by the owner or assignee of the mortgage loan." 12 C.F.R. §1024.38((b)(2)(e).

40. While violations of 12 C.F.R. §1024.38 are not directly actionable by borrowers, errors arising from the mortgage servicer's failure to institute appropriate policies are directly actionable pursuant to 12 C.F.R. §1024.35, 12 C.F.R. §1024.36 and 12 C.F.R. §1024.41.

41. Plaintiff seeks damages from Defendant Rushmore to correct errors where Rushmore was given lawful notice of its errors pursuant to 12 C.F.R.

§1024.41(c)(1)(i) and failed to remedy or even acknowledge these errors and under several state law causes of action.

42. Rushmore made misstatements or omissions of material fact concerning Plaintiff's application for modification of her mortgage loan.

43. Rushmore's misrepresentations of material fact constitute a violation of 12 U.S.C. §2605(f), 12 C.F.R. §1024.35, and 12 C.F.R. §1024.41.

44. Defendants failed to correct those errors when given notice thereof.

45. Plaintiff seeks to apply the statutory scheme to recover damages from Rushmore for violations of RESPA.

46. Plaintiff also seeks damages from Rushmore for failing to correct errors after Rushmore was given lawful notice of said errors pursuant to 12 C.F.R. §1024.41(c)(1)(i).

47. Plaintiff seeks damages from Rushmore for failing to correct errors wherein Rushmore was given lawful notice of dual tracking the Debtor's loan pursuant to 12 C.F.R. §1024.41(g).

48. In the case where the borrower is approved for a loan modification the statute creates a regime where the borrower has the statutory right to know under which program the borrower was reviewed and approved.

49. The statutory scheme is designed to make the mortgage modification process transparent. Transparency is required to ensure that borrowers can review the decision of their loan servicer to modify their mortgage loan and determine whether the mortgage servicer has complied with their obligation under RESPA.

50. In the case where a loan modification is denied, the statute creates a scheme where the calculation of the review is made transparent to the borrower; if the borrower believes that loan servicer's review is inaccurate, then the borrower has the statutory right to appeal that decision pursuant to 12 C.F.R. §1024.41(h).

51.   In the case where the borrower is approved for a loan modification, the statute provides that the borrower has the statutory right to know under which program the borrower was reviewed and approved.

52.   The statute must be interpreted to require the loan servicer to make transparent the loan modification program(s) for which the borrower is eligible. If this were not the case, then borrowers could never appeal a modification, forbearance, or repayment plan for which the borrower was approved, even if the borrower believes that the mortgage servicer should have reviewed the borrower under an alternate program that would have provided a greater benefit to the borrower.

53.   The statutory scheme creates a statutory right pursuant to 12 C.F.R. §1024.36 to have the loan servicer make all programs under which the Debtor may be eligible and to review all documents that concern the servicing of her mortgage loan, specifically those that are relevant to the modification review process. This includes the valuation of her home and the instruments upon which the payment is based and calculated. It further includes the right to see a complete accounting for all monthly principal, interest, taxes and insurance paid on her behalf for the life of the loan.

54.   A loan servicer shall not commence an action to foreclose or advance a foreclosure to judgment or sale in derogation of 12 C.F.R. §1024.41(f) and (g) because the borrower has the right to appeal a denial of a review of loss mitigation pursuant to 12 C.F.R. §1023.41(h).

55.   Where, as here, a borrower has applied for a mortgage modification, and is approved for a modification plan that is substantially less beneficial to the borrower and, in fact, creates a substantial burden on the borrower, such "approval" amounts to the servicer having used a false pretext to constructively deny the

borrower for a loss mitigation program for which the borrower should have been considered.

56. A loan servicing agent's constructive denial of loss mitigation subverts the consumer protections provided by the State of New York, Federal Law and applicable local rules in both State and Federal Courts applicable to the servicing of mortgage loans and the modification of loans that are distressed, that are in danger of being foreclosed or that are in foreclosure.

57. Borrowers have the right to seek specific information concerning the mortgage servicing of their loan pursuant to 12 C.F.R. §1023.36.

58. Rushmore has not complied with its obligations to respond to the requests for information the Plaintiff has served upon Rushmore regarding the servicing of the mortgage loan.

59. Plaintiff has availed herself of the statutory mechanism to give notice to the loan servicer of the error pursuant to 12 C.F.R. §1024.35.

60. Defendants have failed to timely provide information pursuant to 12 C.F.R. §1024.36.

61. Rushmore has failed to correct its errors pursuant to 12 C.F.R. §1024.35.

62. Here, Plaintiff could not file a timely appeal to the purported loan modification offer, because, as worded, it was not a "denial" within the statutory definition.

63. However, Rushmore's purported "loan modification" offer to Plaintiff is the legal equivalent of a constructive denial pursuant to an unlawful review.

64. Defendants have acted in a manner that is generally harmful to consumers in the State of New York by inflicting needless harm on consumers by subverting the consumer protections provided by the State of New York, Federal

Law and applicable local rules in both State and Federal Courts applicable to this case.

65. Further, the Defendants' conduct, as described more fully herein, constitutes a scheme to subvert the lawful consumer protections provided by law generally to all consumers in the State of New York. This subversion of general consumer protections affects consumers in the State of New York generally and has resulted in unnecessary foreclosures, and resulting needless harm inflicted on numerous consumers within the State of New York and Plaintiff in particular by denying consumers permanent, affordable loan modifications.

66. Plaintiff has been damaged by the Defendants' collective conduct and seeks actual, statutory and punitive damages as allowed by the law as a jury deems reasonable and may award.

67. The conduct of the Defendants is intentional, willful or taken with reckless disregard of its impact on consumers. The conduct has been undertaken by Defendants with full knowledge that financially vulnerable consumers will be needlessly harmed by the Defendants' collective conduct.

68. Defendant has engaged in a pattern and practice of violating RESPA against this Debtor-Plaintiff on more than two occasions and against other borrower's loans that Rushmore services.

69. Plaintiff seeks all damages allowable under the law for the conduct of the Defendants, whether under a direct liability theory or a *respondeat superior* theory.

70. Plaintiff seeks compensatory damages and statutory damages under her RESPA claims.

71. Plaintiff seeks compensatory and punitive damages for her fraud and GBL §349(a) claim.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF 12 C.F.R. §1024.41(d)

72. Plaintiff repeats, realleges and reiterates all allegations contained in all prior paragraphs of the complaint as if fully set forth herein.

73. Rushmore's repeated misstatements concerning the reasons for denial of its loan modification (and its misrepresentation of the nature of the loss mitigation offer made), and the appeals taken therefrom, constitute violations of 12 C.F.R. §1024.41(d) and 12 C.F.R. §1024.41(h).

74. Plaintiff has been injured and damaged as a result of Rushmore's violation of RESPA.

75. Plaintiff has actual damages in the form of economic damages resulting from Rushmore's false statements, including: attorney's fees; accrued mortgage interest; costs; and time spent attempting to obtain mortgage assistance including both personal and work time.

76. Plaintiff has suffered actual damages in the form of noneconomic damages resulting from Rushmore's false statements in the form of mental anguish, a category of damages which includes stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and suffering, and temporary loss of a normal life resulting from the impact of Rushmore's conduct on Plaintiff's normal life.

WHEREFORE, Plaintiff demands judgment against Rushmore for all lawful damages in an amount the jury deems reasonable and may award.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF 12 C.F.R. §1024.41(d)

77. Plaintiff realleges all prior paragraphs of this complaint as if fully set forth herein.

78. Rushmore's use of a false pretext for seeking termination of loss mitigation is a violation of 12 C.F.R. §1024.41(d).

79. Rushmore has used materially false pretexts to deny Plaintiff's applications for loss mitigation, and it also impermissibly sought termination of loss mitigation so that it could proceed prematurely with its motion for relief from the automatic stay.

80. Plaintiff has been injured and damaged as a result of Rushmore's violation of RESPA.

81. Plaintiff has suffered actual damages in the form of economic damages resulting from Rushmore's actions in the form of attorney's fees, accrued mortgage interest, costs, time spent attempting to obtain mortgage assistance including both personal and work time.

82. Plaintiff has suffered actual damages in the form of noneconomic damages resulting from Rushmore's actions in the form of mental anguish, a category of damages which includes stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and suffering, and temporary loss of a normal life resulting from the impact of Rushmore's conduct on Plaintiff's normal life.

WHEREFORE, Plaintiff demands judgment against Rushmore for all lawful damages in an amount the jury deems reasonable and may award.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF 12 C.F.R. §1024.36

83. Plaintiff realleges all prior paragraphs as if fully set forth herein.

84. Plaintiff gave notice to Rushmore by Notices of Error dated January 16, 2019 and January 18, 2019.

85. Rushmore acknowledged receipt of the Notices of Error by letter to Plaintiff and her counsel dated January 30, 2019.

86. As of the date of the filing of this adversary complaint, Rushmore has not adequately and completely responded to Plaintiff's Notice of Error.

87. Rushmore's failure to respond to a Notice of Error is a violation of 12 C.F.R. §1024.35 and also constitutes a failure to correct the errors identified.

88. Rushmore's failure to correct the errors proximately caused needless harm to the Plaintiff.

89. Plaintiff has suffered actual damages in the form of economic damages resulting from Rushmore's actions in the form of attorney's fees, accrued mortgage interest, costs, time spent attempting to obtain mortgage assistance including both personal and work time.

90. Plaintiff has suffered actual damages in the form of noneconomic damages resulting from Rushmore's actions in the form of mental anguish, a category of damages which includes stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and suffering, and temporary loss of a normal life resulting from the impact of Rushmore's conduct on Plaintiff's normal life.

WHEREFORE, Plaintiff demands judgment against Rushmore for all lawful damages in an amount the jury deems reasonable and may award.

## FOURTH CLAIM FOR RELIEF
## VIOLATION OF 12 C.F.R. §1024.41(g)

91. Plaintiff realleges all prior paragraphs as if fully set forth herein.

92. As of the date of this adversary complaint, Rushmore has moved for relief from the automatic stay so that it may sell Plaintiff's residence at auction.

93. In doing so, Rushmore has violated 12 C.F.R. §1024.41(g).

94. Rushmore has engaged in bad faith by making continued intentional material misstatements of fact to the borrower and to the Bankruptcy Court concerning the loss mitigation options it offered and did not offer to Plaintiff.

95.  Rushmore's conduct is intentional and is calculated to subvert the legal protections afforded to Plaintiff.

96.  As a result of Rushmore's conduct, Plaintiff has been injured and damaged.

97.  Plaintiff has suffered actual damages in the form of economic damages resulting from Rushmore's actions in the form of attorney's fees, accrued mortgage interest, costs, time spent attempting to obtain mortgage assistance including both personal and work time.

98.  Plaintiff has suffered actual damages in the form of noneconomic damages resulting from Rushmore's actions in the form of mental anguish, a category of damages which includes stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and suffering, and temporary loss of a normal life resulting from the impact of Rushmore's conduct on Plaintiff's normal life.

WHEREFORE, Plaintiff demands judgment against Rushmore for all lawful damages in an amount the jury deems reasonable and may award.

## FIFTH CLAIM FOR RELIEF
## CIVIL FRAUD

99.  Plaintiff realleges all prior paragraphs as if fully set forth herein.

100.  At all times material to this complaint, the Defendants collectively, through Rushmore, represented to Plaintiff and this Court, on multiple occasions, in writing, that it had offered a loan modification to Plaintiff.

101.  Defendants collectively, through Rushmore, represented to Plaintiff and this Court, on multiple occasions, in writing that there were no other loss mitigation options for the Plaintiff.

102.  Defendants knew that their affirmative statements were false and they were known to be false when made.

103. Defendants knew that their omissions of material fact rendered the statements to Plaintiff were false when made.

104. In fact, Defendants knew that the "deal documents" which authorized the mortgage servicer to service the loans for the benefit of the investors, authorized the mortgage servicer to undertake any reasonable action to modify a loan to prevent foreclosure. These options included the full panoply of tools a mortgage servicer might use to modify a loan.

105. Defendants repeatedly falsely asserted that there were no other options for loss mitigation for the Plaintiff.

106. Defendants made these false statements and omitted these material facts for the purpose of inducing Plaintiff to accept these statements as true and cease her pursuit of a mortgage modification.

107. Defendants' suppression of the true facts prevented the Plaintiff from learning the truth of the matter until she had retained her current counsel.

108. The Plaintiff relied on these false statements and changed her position.

109. As a result of the Defendants' fraud, Plaintiff was injured and damaged.

110. Plaintiff has suffered actual damages in the form of economic damages resulting from the Defendants' actions in the form of attorney's fees, accrued mortgage interest, costs, time spent attempting to obtain mortgage assistance including both personal and work time.

111. Plaintiff has suffered actual damages in the form of noneconomic damages resulting from the Defendants' actions in the form of mental anguish, a category of damages which includes stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and suffering, and temporary loss of a normal life resulting from the impact of Rushmore's conduct on Plaintiff's normal life.

WHEREFORE, Plaintiff demands judgment against the Defendants for all lawful damages in an amount the jury deems reasonable and may award including, specifically, punitive damages.

## SIXTH CLAIM FOR RELIEF
## VIOLATION OF GBL 349(a)

112.  Plaintiff realleges all prior paragraphs as if fully set forth herein.

113.  At all times material to this case, Defendants have acted in concert in a manner inconsistent with New York State Law governing the good faith conduct required of lenders concerning good faith review for all mortgage modification applications.

114.  Defendants' collective conduct violates and subverts the protections provided to consumers by CPLR §3408(f)(2), NYCRR 202.12-a, 3 NYCRR 419.2, 3 NYCRR 419.3, 3 NYCRR 419.11.

115.  Defendants' collective conduct further subverts the protections afforded generally to homeowners in New York by failing to adequately protect consumer's rights to consideration for mortgage assistance under the Home Affordable Mortgage Program ("HAMP.")

116.  Defendants' collective conduct violates and subverts the protections provided to consumers generally and Plaintiff specifically by subverting, avoiding and denying consumers generally and Plaintiff specifically, the rights and protections set out in the applicable sections of RESPA and Regulation X by failing to consider Plaintiff for appropriate loss mitigation, failing to respond to her requests for information, notices of error and notices of appeal with respect to her mortgage loan account and her applications for loss mitigation assistance.

117. Defendants collectively made intentional misrepresentations of fact through Rushmore to Plaintiff regarding the options available to her and the nature of the offer it made to her.

118. Defendants collectively suppressed and omitted the true facts regarding the availability of loss mitigation to the Plaintiff to pursue their schemes and push for foreclosure.

119. The effect of these misrepresentations and the suppression of the true facts was to deny Plaintiff protections afforded to her under New York and Federal Law for the collective financial benefit of the Defendants.

120. This conduct was not limited to Plaintiff only, but was directed at the consuming public generally by the Defendants.

121. These acts and practices of the Defendants are unfair and deceptive under GBL §349.

122. Defendants' acts or practices are unfair, deceptive and misleading in a material way.

123. Plaintiff has been injured and damaged as a result of the collective misconduct of the Defendants as alleged herein.

124. Plaintiff has suffered actual damages in the form of economic damages resulting from the Defendants' actions in the form of attorney's fees, accrued mortgage interest, costs, and time spent attempting to obtain mortgage assistance including both personal and work time.

125. Plaintiff has suffered actual damages in the form of noneconomic damages resulting from the Defendants' actions in the form of mental anguish, a category of damages which includes stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and suffering, and temporary loss of a normal life resulting from the impact of Rushmore's conduct on Plaintiff's normal life.

WHEREFORE, Plaintiff demands judgment against the Defendants for all lawful damages in an amount the jury deems reasonable and may award including, specifically, an award of punitive damages.

## **Demand for Trial by Jury**

Plaintiff hereby demands a trial by struck jury on all issues and causes of action arising in this complaint.

Melville, New York
March 19, 2019

        /s/ Charles Wallshein
    Charles Wallshein Esq.
*Co-Counsel for Plaintiff Anite Pichonot*
35 Pinelawn Road
Suite 106E
Melville, NY 11747
(631) 824-6555
cwallshein@wallsheinlegal.com


Brooklyn, New York
March 27, 2019

THE LAW OFFICES OF ERIN E. WIETECHA


By:   /s/ Erin E. Wietecha
    Erin E. Wietecha
*Co-counsel for Plaintiff Anite Pichonot*
35 Pinelawn Road
Suite 106E
Melville, NY 11747
(347) 305-1766
erin@wietechalaw.com

20